IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
_____

| | |
|---|---|
| CRAIG DUNCAN NICHOLLS, | **MEMORANDUM DECISION & ORDER DENYING HABEAS CORPUS PETITION** |
| Petitioner, | |
| v. | Case No. 2:09-CV-982 TC |
| ALFRED BIGELOW, | District Judge Tena Campbell |
| Respondent. | |

_____

Petitioner Craig Duncan Nicholls, an inmate at Central Utah Correctional Facility, petitions for § 2254 habeas corpus relief.[1]  For the reasons set forth below, the court denies his request.[2]

BACKGROUND

Mr. Nicholls pleaded guilty in Utah state court to one count of aggravated murder, for which he was sentenced to life in prison without the possibility of parole.  He unsuccessfully challenged his conviction in a state post-conviction proceeding.  The Utah Supreme Court affirmed that denial.[3]

In his petition, Mr. Nicholls argues that his constitutional rights were violated because his guilty plea was involuntary and unintelligent due to his mental illness (i.e., debilitating

---

[1]*See* 28 U.S.C.S. § 2254 (2013).

[2]Mr. Nicholls has exhausted all of his remedies in the state courts, so his petition is properly before this court.  The court also notes that although it appears that the petition was untimely, the State did not raise that defense and so has waived it.

[3]*Nicholls v. Utah*, 2009 UT 12.

depression). He further asserts ineffective assistance of counsel stemming from his counsel's (a) failure to provide him with medication and notify the court of his depression; (b) conflict of interest in feeding him incorrect and misleading instructions that coerced him to plead guilty, despite a lack of evidence against him; (c) failure to investigate his case by questioning witnesses; and (d) failure to prepare or provide a presentencing investigation report. The State responds to the petition, rightly contending that these issues do not overcome the federal habeas standard of review that controls the court's analysis.

## ANALYSIS

### I. Standard of Review

The standard of review to be applied in federal habeas cases is found in § 2254 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), under which Mr. Nicholls files his habeas petition. § 2254 provides that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the

>     facts in light of the evidence presented in
>     the State court proceeding.[4]

"Subsection (d)(1) governs claims of legal error while subsection (d)(2) governs claims of factual error."[5]

The court must determine whether the Utah Supreme Court's rejection of Mr. Nicholls's claims "was contrary to, or involved an unreasonable application of, clearly established Federal law."[6] This "'highly deferential standard'"[7] is "difficult to meet, because the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction."[8] The court may not determine whether the Utah Supreme Court's decision was correct or whether this court may have reached a different outcome.[9] "The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited."[10]

---

[4] 28 U.S.C.S. § 2254(d) (2013).

[5] *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).

[6] 28 U.S.C.S. § 2254(d)(1) (2013).

[7] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citations omitted); *see also Littlejohn v. Trammell*, 704 F.3d 817, 824 (10th Cir. 2013).

[8] *Greene v. Fisher*, 132 S. Ct. 38, 43-44 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment))).

[9] *See Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

[10] *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

And, "[t]he petitioner carries the burden of proof."[11]

Under *Carey v. Musladin*,[12] the first step is determining whether clearly established federal law exists relevant to Mr. Nicholls's claims.[13]  Only after answering yes to that "threshold question" may the court go on to "ask whether the state court decision is either contrary to or an unreasonable application of such law."[14]

> [C]learly established [federal] law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.[15]

Further, "in ascertaining the contours of clearly established law, we must look to the '*holdings* as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."[16]  And, in deciding whether relevant clearly established federal law exists, this court is not

---

[11]*Cullen*, 131 S. Ct. at 1398.

[12]549 U.S. 70 (2006).

[13]*House*, 527 F.3d at 1017-18; *see also Littlejohn*, 704 F.3d at 825.

[14]*House*, 527 F.3d at 1018.

[15]*Id.* at 1016.

[16]*Littlejohn*, 704 F.3d at 825 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (emphasis added) (citations omitted)).

restricted by the state court's analysis.[17]

If this threshold is overcome, this Court may grant habeas relief only when the state court has "unreasonably applied the governing legal principle to the facts of the petitioner's case."[18] That is, under this deferential standard, a federal habeas court may not issue a writ merely because it determines on its own that the state court decision erroneously applied clearly established federal law.[19] "'Rather that application must also be unreasonable.'"[20] Indeed, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'"[21]

Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings."[22] It maintains power to issue the writ when no possibility exists that "fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's

---

[17]*See Bell v. Cone*, 543 U.S. 447, 455 (2005) ("[F]ederal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) ("[A] state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'") (citation omitted).

[18]*Walker v. Gibson*, 228 F.3d 1217, 1225 (10th Cir. 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

[19]*See id.*

[20]*Id.* (quoting *Williams*, 529 U.S. at 411).

[21]*Harrington*, 131 S. Ct. at 785 (emphasis in original) (quoting *Williams*, 529 U.S. at 410).

[22]*Id.* at 786.

precedents. It goes no farther."[23] To prevail in federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[24] It is against this backdrop that this court now applies the standard of review to the circumstances of this case.

## II. Application of Standard of Review

### A. Validity of Guilty Plea

Mr. Nicholls urges this court to overturn the Utah Supreme Court's decision that his federal constitutional rights were not violated when he pleaded guilty despite his mental illness (i.e., debilitating depression). Noting again that review is tightly circumscribed by the standard of review for federal habeas claims by state prisoners, this court reviews the analysis by the Utah Supreme Court, which is quoted below:

> A "guilty plea is not valid under the Due Process Clause of the United States Constitution unless it is knowing and voluntary." *Bluemel v. State*, 2007 UT 90, ¶ 17, 173 P.3d 842 (citations omitted); *see also Boykin v. Alabama*, 395 U.S. 238, 243 n.5, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), *superseded by statute*, Fed. R. Crim. P. 11(c) (holding that the Due Process Clause requires that waiver "be an intentional relinquishment

---

[23] *Id.*

[24] *Id.* at 786-87.

6

or abandonment of a known right or privilege" (internal quotation marks omitted)). A knowing and voluntary plea is one that has a factual basis for the plea and ensures that the defendant understands and waives his constitutional right against self-incrimination, the right to a jury trial, and the right to confront witnesses. *Boykin*, 395 U.S. at 243. A prerequisite to entering a knowing and voluntary plea is that the defendant must be mentally competent to enter it. *See State v. Arguelles*, 2003 UT 1, ¶ 47, 63 P.3d 731 ("It is well established that due process requires that a defendant be mentally competent to plead guilty and to stand trial."); *see also* Utah Code Ann. § 77-15-1 (2008) ("No person who is incompetent to proceed shall be tried for a public offense."). A defendant is not mentally competent

> if he is suffering from a mental disorder or mental retardation resulting either in:
> (1) his inability to have a rational and factual understanding of the proceedings against him or of the punishment specified for the offense charged; or
> (2) his inability to consult with his counsel and to participate in the proceedings against him with a reasonable degree of rational understanding.

Utah Code Ann. § 77-15-2 (2008).

Thus, we have held that "[i]n determining whether a defendant is competent to plead guilty, the trial court must consider whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational

7

understanding and has a rational as well as factual understanding of the proceedings against him." *State v. Holland*, 921 P.2d 430, 433 (Utah 1996) (internal quotation marks omitted); *see also State v. Lafferty*, 2001 UT 19, ¶ 51, 20 P.3d 342 ("[C]ompetency is established when a defendant can, but not necessarily will, assist or consult with counsel." (internal quotation marks omitted)).

A trial court is not, however, required to order a competency hearing unless defense counsel, the prosecutor, or the custodian of a defendant files a petition alleging incompetence. *See State v. Bailey*, 712 P.2d 281, 285 (Utah 1985). In the absence of a petition, "[a] trial court must hold a competency hearing when there is a substantial question of possible doubt as to a defendant's competency at the time of the guilty plea." *Jacobs v. State*, 2001 UT 17, ¶ 13, 20 P.3d 382 (internal quotation marks omitted). "In determining whether the lower court should have ordered a competency hearing, we consider only those facts that were before the [trial] court when the plea was entered." *Arguelles*, 2003 UT 1, ¶ 50, 63 P.3d 731 (alteration in original) (internal quotation marks omitted).

The question here is whether, based on the facts that were before the trial court when Nicholls entered his guilty plea, there was a substantial question of doubt as to Nicholls's competence. Our review of the record leads us to conclude that the answer is no.

Before the plea hearing formally began, the judge asked Nicholls, "are you under the influence of any drugs, medication or alcohol?" Nicholls responded, "[n]o, sir." The judge then asked, "[a]re you confident that you are in complete control of your mental faculties and are able to proceed today?" Nicholls responded, "[y]es, sir." George Daines, the county attorney, then explained that he was "going to walk through

8

n/a

the notice [of plea bargain and Rule 11 waiver statement] for the purpose of making sure that [Nicholls] understands each part of [it]. . . ."

The county attorney then read each charge and each waiver of rights, paragraph by paragraph, and asked Nicholls if he understood. In each instance, Nicholls responded, "[y]es, sir." The county attorney also read Nicholls's first-person narrative of the plot and murder of Boudrero and asked Nicholls if the description was accurate. After each paragraph, Nicholls responded, "[y]es, sir," or, "[t]hat's correct."

The county attorney then asked Nicholls to confirm the following statements:

> Q. My decision to enter this plea was made after full and careful thought, with the advice of counsel and with a full understanding of my rights and the facts and circumstances of the case and the consequences of the plea. I was not under the influence of any drugs, medication or intoxicants when the decision to enter the plea was made and I am not now under the influence of any drugs, medication or intoxicants.
>
> A. Yes, sir.
>
> Q. I have no mental reservations concerning this plea.
>
> A. Yes, sir.

9

The court then asked, "Mr. Nicholls, . . . [d]o you believe that you are making this plea intelligently, knowingly, voluntarily and intentionally?" Nicholls responded, "[y]es, sir." Nicholls then entered his guilty plea, waived the sentencing period, and was sentenced to life in prison without the possibility of parole.

Nothing in the plea colloquy suggested that Nicholls was incompetent. He participated in the hearing by giving precise, appropriate answers at appropriate times. While Nicholls argues that the affidavits submitted by Dr. Spencer and Dr. Weber demonstrate that he was incompetent to make "major life impacting decisions," we review the trial court's determination of a defendant's competence based on the facts that were before the court when the plea was entered. *Id.* The facts before the trial court did not include Dr. Spencer's diagnosis of Nicholls, nor did they include Dr. Weber's opinion regarding Nicholls's GAF score. In fact, the affidavits of Dr. Spencer and Dr. Weber are dated January 2006. Nicholls's plea hearing occurred in November 2003. Additionally, Nicholls responded positively to the court's question, "[a]re you confident that you are in complete control of your mental faculties and are able to proceed today?" Nicholls was given numerous opportunities to alert the court that he was not competent to enter the plea and never did so. Nevertheless, Nicholls insists that the trial court should have ordered, sua sponte, a competency hearing before accepting his plea.

In *Arguelles*, we reviewed the record of a trial court to determine whether the trial court should have moved, sua sponte, for a competency hearing of the defendant. We held that the court did not err in failing to raise the question of a defendant's competence because the defendant was "coherent," "responded to questions appropriately," and "repeatedly affirmed" his

choice to plead guilty. *Id.* ¶ 53. We also noted that the defendant indicated by words and actions that he understood the proceedings, and he fully participated in the hearings. . . . The record shows that [the defendant] exhibited no mental defects at the hearings, that he understood the proceedings, answered the questions posed, and participated in the hearings. Neither standby counsel nor the State expressed any concern over [the defendant's] competence to proceed, nor does the record contain any indication that he was not competent. *Id.*

Similarly, Nicholls indicated by words and actions that he understood the proceedings and the rights he was waiving, and there is nothing in the record to suggest that Nicholls exhibited any mental defect or inappropriate behavior that should have alerted the court to his possible incompetence. As noted, during the plea hearing, Nicholls answered the court's questions precisely and appropriately. He worked with his attorney prior to the hearing to revise his plea statement to reflect a more accurate depiction of the events. He agreed that the narrative was read correctly and agreed, after each paragraph, that the content was accurate. Thus, the trial court had no reason to suspect, based on the facts that were before the court, that Nicholls was not competent to enter his guilty plea.

Additionally, while the affidavits submitted by Dr. Spencer and Dr. Weber indicate that Nicholls was likely depressed, depression and anxiety are normal responses to the stressful circumstances attending a criminal prosecution and possible death sentence. "[A]nyone faced with the choice of going to trial for capital murder or pleading guilty and receiving life without the possibility of parole likely would be depressed and upset." *State v. Benvenuto*, 1999 UT 60, ¶ 16, 983 P.2d 556. Depression is not sufficient, however, to establish incompetence where the definition of a

11

competent defendant is one who "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Holland*, 921 P.2d at 433 (internal quotation marks omitted). Here, there was nothing at the plea hearing to suggest that Nicholls's depression was so severe that he was unable to rationally consult with his lawyer or that he failed to have a rational understanding of the proceedings against him.

Nicholls consulted with his attorney prior to the plea hearing and demonstrated at the plea hearing that he understood the content of the hearing. When the county attorney asked: "I hereby acknowledge and certify that I . . . understand the following facts and rights and that *I've had the assistance of counsel* in reviewing, explaining, and completing" the appropriate plea forms, Nicholls responded, "[y]es sir." (Emphasis added.) Nicholls also worked with his attorney to draft and revise his narrative of the crime to ensure its accuracy. When asked whether he "discussed this case and the plea with my attorneys as much as I wish to [and] . . . have no further questions of my lawyer prior to the court taking my plea," Nicholls responded, "[y]es, sir." When asked if he understood the proceedings against him and each of the constitutional rights he was waiving, in each instance, Nicholls responded, "[y]es, sir." Nicholls's actions and answers demonstrate that he had the ability to rationally consult with his lawyer and that he understood the proceedings against him.

Therefore, despite the depression Nicholls may have been experiencing at the time of the plea hearing, the record does not demonstrate, and Nicholls has not proven by a preponderance of the evidence, that his plea was not knowing and voluntary due to mental

12

illness.[25]

Under *Carey*, this court must first determine whether there is applicable on-point United States Supreme Court precedent.[26] This is regardless of whether the Utah Supreme Court failed to cite or refer to any case law at all, let alone U.S. Supreme Court cases.[27]

The court notes that the Utah Supreme Court cited *Boykin*,[28] which stands for the generally applicable notion that "'a guilty plea . . . cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.'"[29]  The Utah Supreme Court also cited extensively to Utah state case law, which in turn, cited to relevant U.S. Supreme Court case law.  For instance, the state court decision in *Arguelles* established, with a cite to U.S. Supreme Court case *Drope v. Missouri*,[30] that "due process requires that a defendant be mentally competent to plead guilty and to stand trial."[31]

---

[25]*Nicholls*, 2009 UT 12, §§ 20-33 (footnote 19 deleted).

[26]*House*, 527 F.3d at 1017-18.

[27]*See Bell*, 543 U.S. at 455; *Mitchell*, 540 U.S. at 16.

[28]395 U.S. at 243 n.5.

[29]*Id.* (quoting *McCarthy v. United States*, 394 U.S. 459, 466 (1969)).

[30]420 U.S. 162, 172 (1975) (stating prohibition against subjecting mentally incompetent defendant to trial is fundamental to adversarial system of justice).

[31]2003 UT 1, ¶ 47.

*Holland*[32] quotes U.S. Supreme Court case *Godinez v. Moran* to say that a trial court must evaluate "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'"[33]  *Woodland*[34] also refers to *Dusky*.  *Bailey*[35] analyzes the facts of its case against *Drope*,[36] and another U.S. Supreme Court case, *Pate v. Robinson*,[37] both of which involved defendants' claims of incompetence.  *Jacobs*[38] also cites to *Dusky*[39] and *Godinez*.[40]

Additionally, this court has independently reviewed all relevant United States Supreme Court precedent existing at the time the Utah Supreme Court filed its opinion.  In doing so, the court finds that the Utah Supreme Court cited to the appropriate United States Supreme Court case law.

---

[32] 921 P.2d at 433.

[33] 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)).

[34] 945 P.2d 665, 668 (citing *Dusky*, 362 U.S. at 402).

[35] 712 P.2d at 285.

[36] 420 U.S. 162.

[37] 383 U.S. 375 (1966).

[38] 2001 UT 17 at ¶ 12.

[39] 362 U.S. at 402.

[40] 509 U.S. at 396.

To complete the second prong of its inquiry, this court has comprehensively examined the case law cited by the Utah Supreme Court, existing United States Supreme Court precedent, and the Utah Supreme Court's application of that U.S. Supreme Court precedent to the facts of this case.  Based on that examination, the court is convinced that the Utah Supreme Court reasonably applied U.S. Supreme Court precedent in a way that does not conflict with possible fairminded readings of it.  Accordingly, this court thus will not overturn the Utah Supreme Court's decision that Mr. Nicholls's federal constitutional rights were not violated when he pleaded guilty despite his alleged mental illness.

## B. Ineffective Assistance

Mr. Nicholls further asserts ineffective assistance of counsel stemming from counsel's (a) failure to provide him with medication and notify the court of his depression; (b) conflict of interest in feeding him incorrect and misleading instructions that coerced him to plead guilty, despite a lack of evidence against him; (c) failure to investigate his case by questioning witnesses; and (d) failure to prepare or provide a presentencing investigation report.

The court finds that the Utah Supreme Court correctly selected and reasonably applied the governing legal principle by

which to analyze the ineffective-assistance-of-counsel issue[41]—the familiar two-pronged standard of *Strickland v. Washington*[42]: (1) deficient performance by counsel, measured by a standard of "reasonableness under prevailing professional norms"; and, (2) prejudice to the defense caused by counsel's deficient performance.[43]  The prejudice element requires a showing that errors were so grave as to rob the petitioner of a fair proceeding with a reliable, just result.[44]

The Utah Supreme Court, in evaluating this issue under *Strickland*, stated:

> Petitioner "bears the burden of establishing that his trial counsel was ineffective . . . ."  *State v. Litherland*, 2000 UT 76, ¶ 8, 12 P.3d 92.  To prevail on a claim of ineffective assistance of counsel, petitioner must satisfy the two-prong test established in *Strickland v. Washington*.  466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense."  *Id.* at 687.  Additionally, "proof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality."  *Fernandez v. Cook*, 870 P.2d 870, 877 (Utah 1993).  Given our limited role of review, "demonstrable reality" must be born out by the record. Because we are not fact-finders and do not

---

[41]*Nicholls*, 203 P.2d at 982-83.

[42]466 U.S. 668 (1984).

[43]*Id.* at 687-88.

[44]*Id.*

investigate factual allegations, when a defendant raises an ineffective assistance claim for the first time on appeal, we will review the claim only "if the . . . record is adequate to permit decision of the issue. . . ." *State v. Humphries*, 818 P.2d 1027, 1029 (Utah 1991). Here, the record lacks evidence sufficient to support Nicholls's ineffective assistance of counsel claim.

To satisfy the first prong of *Strickland*, Nicholls must show that his "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Nicholls has pointed to no record evidence that suggests his counsel's representation was not objectively reasonable. Nicholls was facing the death penalty. His counsel advised him to accept a plea offer that spared him a possible death sentence. Though Nicholls claims that his counsel put "*very, very*, little time" into the case and consulted with him only twice for a total of thirty minutes prior to the plea hearing, such allegations are not supported by the record. Even assuming support in the record, however, these allegations are not sufficient to satisfy the first prong of *Strickland*.

We have refused to hold that counsel is ineffective based on the amount of time counsel spent working on the case or consulting with a client: "We decline to determine what amount of time counsel must spend with a defendant to ensure that the representation does not fall below an objective standard of reasonableness. Clearly, the time period will vary with every case." *Parsons v. Barnes*, 871 P.2d 516, 526 (Utah 1994). Here, Nicholls's counsel spent sufficient time on his case to ensure an accurate narrative of the crime was read into the record at the plea hearing and to ensure

17

that Nicholls's plea spared him a possible death sentence.  Given the absence of any record evidence to the contrary, Nicholls has not shown that his counsel's representation fell below an objective standard of reasonableness.

Additionally, we note that during the plea colloquy, Nicholls was asked specifically about the quality of legal counsel he received. The following exchange demonstrates that Nicholls expressed satisfaction with his counsel, agreed that he had not been threatened or bribed, and, when given the opportunity, Nicholls did not make any assertion to the contrary.

> Q. No threats or promises of any sort have been made to me to induce me or to persuade me to enter this plea.
>
> A. Yes, sir.
>
> . . . .
>
> Q. I have discussed this case and the plea with my attorneys as much as I wish to. I have no further questions of my lawyer prior to the court taking my plea. Is that correct?
>
> A. Yes, sir.
>
> Q. I am satisfied with my lawyer's counsel and advice.
>
> A. Yes, sir.
>
> Q. . . . My decision to enter this plea was made after full and careful thought, with the

>                advice of counsel and
>                with a full understanding
>                of my rights. . . .
>
>          A. Yes, sir.
>
>    Because Nicholls has failed to satisfy
> the first prong of *Strickland*, we need not
> reach the second prong--that Nicholls was
> prejudiced by his counsel's performance. We
> note, however, that Nicholls has pointed to
> no record evidence to show that he would have
> garnered a more favorable result had he not
> pled guilty. That is, there is no evidence to
> suggest that he was prejudiced by his
> counsel's performance.[45]

Mr. Nicholls does not argue that the Utah Supreme Court's analysis was incorrect.  Instead, he restates his belief that his attorney's alleged failures equaled a "per se" deficient performance.  But he does not effectively address the matter of possible trial strategy, nor does he address how his retrospective, subjective perspective of his counsel's performance does not square with the Utah Supreme Court's more objective perspective, which is supported by the record.  The record shows that Mr. Nicholls specifically responded without reservation in his plea colloquy that he had not been coerced and that he was satisfied with his attorney's performance.  Moreover, Mr. Nicholls does not suggest that the Utah Supreme Court's decision is at odds with any United States Supreme Court precedent.  Nor does this court's review of U.S. Supreme Court

---

[45]*Nicholls*, 2009 UT 1 at ¶¶ 36-40 (emphasis in original).

19

case law reveal any.[46]

Based on *Strickland*, the Utah Supreme Court was right to analyze how counsel's performance may have been deficient, and, on the basis that it was not, reject Mr. Nicholls's ineffective-assistance-of-counsel claim. This Court is not persuaded that the Utah Supreme Court's application of relevant U.S. Supreme Court precedent was unreasonable.

CONCLUSION

Petitioner Craig Duncan Nicholls's challenges to the circumstances of his guilty plea raise no valid ground for federal habeas relief. IT IS THEREFORE ORDERED that this habeas corpus petition under § 2254 is DENIED.

DATED this 3rd day of April, 2013.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge

---

[46] *See, e.g., Bell v. Cone*, 535 U.S. 685, 698, 702 (2002) (stating "defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy and court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight") (internal quotation marks and citations omitted).